IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RUBEN LOPEZ, § | | |
|     Plaintiff, § | | |
| v. § | NO.  EP-12-CV-00464-RFC | |
| § | | |
| CAROLYN W. COLVIN,[1] § | | |
| Acting Commissioner of Social Security § | | |
| Administration, § | | |
|     Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge (Docs. 3, 13), the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under Titles II and XVI of the Social Security Act.  For the reasons set forth below, this Court orders that the Commissioner's decision be AFFIRMED.

## PROCEDURAL HISTORY

On November 9, 2009,  Plaintiff filed applications for DIB and SSI, alleging a disability onset date of January 1, 1996.[2] (R:137, 144)  His applications were denied initially and on

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The onset date was amended to December 30, 2006, at the March 16, 2011 hearing. (R:32)

reconsideration. (R:63, 67, 78, 81)  Plaintiff filed a request for a hearing, which was conducted on March 16, 2011.  (R:27-58)  The Administrative Law Judge ("ALJ") issued a decision on August 10, 2011, denying benefits.  (R:12-22)  The Appeals Council denied review.  (R:1-4)

## ISSUES

Plaintiff asks this Court to review whether the final decision of the Commissioner denying benefits is supported by substantial evidence.  (Doc. 19)  Plaintiff contends that the record demonstrates that he cannot perform the standing and walking requirements of light work.  *Id*.  He also argues that the ALJ did not properly consider his knee impairment when arriving at the residual function capacity ("RFC") determination in this case.  *Id*.  Defendant responds by urging that substantial evidence does support the ALJ's RFC determination and that Plaintiff's knee impairment was fully considered by the ALJ in arriving at his final decision.  (Doc. 21)

## DISCUSSION

### *I. Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  Substantial evidence "is more than a mere scintilla, and less than a preponderance."  *Masterson*, 309 F.3d at 272, citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner's findings will be upheld if supported by substantial evidence.  *Id*.  A finding of no substantial evidence will be made "only where there is a conspicuous absence of credible choices or no contrary medical evidence."  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (internal citations omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. "Conflicts in evidence are for the Commissioner and not the courts to resolve." *Id.*; *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citation omitted).

## II. Evaluation Process

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

In the present case, the ALJ found that Plaintiff had severe impairments of: partial tear insufficiency of the anterior and posterior cruciate ligaments; patellofemoral chondromalacia; history of a seizure disorder, depression; and anxiety. (R:14) The ALJ determined that none of Plaintiff's impairments, either alone or in combination, met or medically equaled one of the listed impairments. (R:14-16) After considering the entire record, he determined that Plaintiff had the residual functional capacity to perform a wide range of light work that requires no exposure to chemicals, use of moving machinery, or exposure to unprotected heights. (R:16) The work must involve only simple, routine, and repetitive tasks, requiring only occasional simple decision making. *Id.* The

work must require only occasional interaction with the public, incidental to work performed, and only occasional interaction with co-workers with no tandem tasks with coworkers. (R:16) At step four, the ALJ determined that Plaintiff retained the capacity to perform his past relevant work as a cleaner/polisher. (R:20-21) Alternatively, at step five, the ALJ found that considering the Plaintiff's age, education, work experience, and residual functional capacity, there was other work available in significant numbers that Plaintiff could perform. (R:21-22) This finding related to the jobs of a laundry/laborer and a housekeeper/cleaner. *Id*. The ALJ relied on vocational expert testimony in arriving at this conclusion. (R:21-22) Consequently, he found that Plaintiff was not disabled through the date of the decision. (R:22)

### *III. The ALJ's Determination of Plaintiff's Residual Functional Capacity*

Plaintiff contends that substantial evidence does not support the ALJ's RFC determination. Specifically, Plaintiff urges that he cannot perform the standing and walking requirements of light work and that the ALJ did not accommodate his knee impairment and resulting limitations when arriving at his RFC conclusion. (Doc. 19 at 5)

Residual functional capacity is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545; SSR 96-8p. The responsibility to determine the Plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine the Plaintiff's abilities despite his physical and mental limitations. *Martinez*, 64 F.3d at 176. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 fn. 1 (5th Cir. 2001). The ALJ is not

required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

It is Plaintiff's burden to establish disability and to provide or identify medical and other evidence of his impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c). A medically determinable impairment must be established by acceptable medical sources. 20 C.F.R. § 404.1513(a). Plaintiff's own subjective complaints, without objective medical evidence of record, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

## IV.  Plaintiff's DIB Application

Plaintiff alleged that his disability onset date was December 30, 2006. (R:32) Plaintiff's Title II insured status expired on December 31, 2006. (R:150) Hence, Plaintiff must prove that he was disabled during the period of December 30 to December 31, 2006, to be entitled to DIB under Title II of the Social Security Act. *See* 42 U.S.C. §§ 416(i)(3), 423(c); *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) (claimant bears the burden of establishing a disabling condition before the expiration of insured status).

The Court agrees with the ALJ's assessment that a review of the entire record demonstrates that there is no credible medical evidence whatsoever from the year 2006 to support Plaintiff's claim that he was disabled during the DIB period. (*See* R:17) Furthermore, Plaintiff's own testimony at the hearing before the ALJ confirms that he did not have any actual physical problems, including knee problems, back in 2006. (R: 49-50) He testified that the physical problems were a more recent development. (R:50)

In addition, medical records prior to the DIB period's expiration also fail to support Plaintiff's allegation of a disabling impairment. Plaintiff had injured his right knee in a motor

vehicle accident on November 6, 2005.  (R:251-253, 299-301)  On December 5, 2005, Dr. George D. Harrington, an orthopaedic surgeon, determined that Plaintiff had full range of motion of his knee.  (R:251)  A CT scan showed no sign of a fracture.  (R:253)  X-rays of Plaintiff's knee demonstrated no fracture or malalignment.  (R:251)  This medical evidence also fails to support a finding of disability.

Finally, Plaintiff relies on medical evidence from 2009 through 2012.  (Docs. 19 at 5, 21 at 6; R:287, 311, 370, 387, 478-79, 503, 508)  While all of the evidence relied upon was presented to either the ALJ or to the Appeals Council, and is therefore not new evidence presented for the first time in this proceeding, Defendant cites to *Leggett v. Chater*, 67 F.3d at 567, for the proposition that "a claimant cannot prove disability for the relevant period with evidence of deterioration of a condition that was not previously disabling."  (Doc. 21 at 6)  Based on the totality of the record evidence, it is clear that the evidence from 2009 through 2012 can only be construed to relate to the deterioration of a knee condition that was not previously disabling on December 30th or 31st, 2006.  Thus, Plaintiff fails to meet his burden of proving that he was disabled during the relevant time period for his DIB application.  Because substantial evidence supports the ALJ's determination with respect to this issue, there is no error requiring remand.

### V. Plaintiff's SSI Application

Plaintiff must establish disability during the SSI adjudicated period.  The period starts on November 9, 2009, the date the SSI application was filed, and runs through August 10, 2011, the date of the Commissioner's final decision.  (R:22, 137)  A review of the record evidence shows the following.

Between the date of Plaintiff's knee injury, November 6, 2005 (R:251-253), and through the end of 2008, there is no medical evidence that supports a finding of disability. Subsequent medical evidence leads to the same conclusion of non-disability. For example, on August 12, 2009, although Defendant wore a knee brace, emergency room records regarding a musculoskeletal exam indicated he had normal range of motion, normal strength, and no muscle tenderness. (R:285-287) Two months later, Dr. Benson Chee examined Plaintiff and found no musculoskeletal abnormalities upon examination. (R:311) Although Plaintiff complained of joint tenderness at the knees and wore bilateral knee braces, Dr. Chee made no reference to any knee impairment or knee pain as one of Plaintiff's problems. *Id*.

Plaintiff was again seen by Dr. Chee on January 20, 2010, March 24, 2010, and May 19, 2010. (R: 340-341, 369-370, 395-396) No complaints of knee pain were made. *Id*. As in 2009, Dr. Chee noted no musculoskeletal abnormalities upon examination and made no reference to a knee impairment or knee pain as one of Plaintiff's problems. *Id*.

On February 8, 2010, a Physical RFC Assessment form was completed by Dr. James Wright, a state agency medical consultant. (R:356-363) Based upon his review of medical records, he concluded that Plaintiff had no limitations in his ability to stand, walk, sit, lift, or carry. *Id*. He deemed Plaintiff's allegations to be not wholly credible. (R:361)

On September 20, 2010, Dr. Levine saw Plaintiff for a neurological consultation. (R:384) Plaintiff had normal muscle status, full muscle strength, and normal reflexes. (R:387-389) Dr. Levine did find that Plaintiff had some coordination problems and therefore restricted him to no driving, climbing heights, or cooking. (R:390)

7

Dr. Chee again saw Plaintiff on January 11, 2011. (R:401-403) Again, Plaintiff failed to complain of knee pain. *Id*. A musculoskeletal examination was normal. *Id*. Plaintiff also had a physical examination at the Texas Tech Physician's Epilepsy Clinic on April 21, 2011. (R:489) The results were normal, other than a slight intention tremor with a finger to nose test. *Id*.

In his decision, the ALJ considered Plaintiff's allegations of knee pain, and, giving him the benefit of the doubt, limited him to a light exertional level. (R:19) He also included limitations in the RFC, to include no use of moving machinery or exposure to unprotected heights, that took into account Dr. Levine's restrictions. (R:20) This refutes Plaintiff's argument that the ALJ failed to accommodate his knee impairment. Finally, the Court notes that, as the ALJ indicated, a review of all medical evidence at that time, including the opinions of all treating and examining physicians, failed to show functional limitations greater than those the ALJ identified in his RFC finding. (R:20) Thus, substantial evidence supports the ALJ's determination that Plaintiff had the RFC to perform light work, and no legal error was committed in arriving at that determination.

The Court is mindful of Plaintiff's emphasis of record evidence that weighs in favor of disability. Defendant's evidence indicates that he has difficulty with walking and standing. (R:203, 232) He hardly walks anywhere. (R:203) He can walk half a block and then needs to rest for thirty minutes afterwards. (R:232) He wears a knee brace on his right knee (R:287) and at one point walked with an antalgic gait, was using his cane, and appeared to be in pain. (R:370) In addition, Plaintiff relies on an April 14, 2011, MRI of Plaintiff's right knee, which showed a partial tear insufficiency of ACL and PCL, patellofemoral chondromalacia (Grade IV), mild femoral condylar chondromalacia (Grade II), myxoid changes of posterior horn of medical meniscus, and moderate suprapatellar joint effusion with mild synovitis. (R:478-479)

Unfortunately for Plaintiff, the question here is not whether there is some or even substantial evidence supporting Plaintiff's disability claim, but whether there is substantial evidence, which may be less than a preponderance of the evidence, to support the Commissioner's determination. *See Newton v. Apfel*, 209 F.3d at 452.  In reviewing Plaintiff's no-substantial-evidence claim, the Court has considered the record as a whole and has taken "into account whatever in the record fairly detracts from its weight." *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).  The ALJ found that statements made by Plaintiff regarding the intensity, persistence and limiting effects of his impairments were not credible to the extent that they were inconsistent with the RFC arrived at by him.  (R:16)  It is within the ALJ's discretion to resolve conflicting evidence, including conflicting medical evidence. *See Jones v. Heckler*, 702 F.2d 616, 621 (5th Cir. 1983).  The April 14, 2011, MRI report fails to support disability because it does not indicate what functional limitations stem from the right knee impairment.  (R:478-479)  "The mere presence of [an] impairment is not disabling *per se.*"  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).  To whatever degree the isolated evidence highlighted by Plaintiff might detract from the weight of the rest of the evidence in the record, it falls far short of that required to establish a no-substantial-evidence claim.  Plaintiff's evidence fails to preponderate against the ALJ's determination, much less establish a "conspicuous absence of credible choices" or "contrary medical evidence." *See Abshire*, 848 F.2d at 640, *citing Hames*, 707 F.2d at 164.

Finally, Plaintiff relies on both Dr. Levine's March 9, 2012 Medical Source Statement—finding that Plaintiff needs a cane for support and that he is limited to standing/walking for less than two hours in a workday, and that his ability to push/pull is limited due to pain as well as to postural limitations  (R:502-503)—and on Dr. Levine's July 19, 2012, statement—indicating that Plaintiff is

9

unable to work at all and that he is permanently disabled. (R:508) Plaintiff submitted Dr. Levine's Statements to the Appeals Council and the Appeals Council found that the evidence did not warrant review of the ALJ's decision. (R:1-7) This evidence is not material to this Court's decision inasmuch as there is no indication in either instance that Dr. Levine's opinions bore on Plaintiff's RFC prior to August 10, 2011, the date of the ALJ's decision. (*See* R:502-505, 508-509) Evidence is material if it relates to the time period for which disability benefits were denied. *Castillo v. Barnhart*, 325 F.3d 550, 551-552 (5th Cir. 2003). The evidence fails to do so in this case. Thus, this contention by Plaintiff also fails to present a basis for remand.

## **CONCLUSION**

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's decision and that no legal error has been committed. The Court hereby ORDERS that the decision of the Commissioner be AFFIRMED consistent with this opinion.

**SIGNED** and **ENTERED** on July 30, 2014.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE